## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|---|---|---|---|
| Title | *Anshen v. Facebook* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**      IN CHAMBERS ORDER GRANTING MOTION TO DISMISS [26]

This is a private securities action filed pursuant to Section 10(b) of the Exchange Act. For the following reasons, the motion to dismiss is GRANTED.

### I.      Introduction

Plaintiffs Daniel Anshen and Jung Passow allege that Defendants Facebook, Inc., Mark Zuckerberg, David Wehner, and Sheryl Sandberg (collectively "Facebook") committed securities fraud in relation to certain statements that Facebook made in relation to its calculation of a particular video metric. Plaintiffs claim Facebook "made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading," Am. Compl. ¶ 99, in the May 5, 2014 post announcing the video metrics and in the "Risk Factor" section of Facebook's 2014 and 2015 10-K filings. In essence, Plaintiffs allegation is that Facebook fraudulently inflated the "average duration of video view" metric. This led advertisers to believe that their ads were more effective than they really were. The revelation that the metric was not accurate led to a decrease in ad revenue for Facebook, which also led to a drop in share price. *See* Am. Compl. ¶¶ 58, 60; Ex. F (9/22/16 WSJ Article).

### II.      Factual Background

Facebook is a social networking site that is free for its users. Am. Compl. ¶ 3. Instead of charging people fees for access to the service, Facebook sells advertising space on its internet platform to companies that want to reach Facebook's audience. Am. Compl. ¶¶ 4, 41. Available advertising formats

Initials of Preparer      _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|----------|------------------------|------|-----------------|
| Title    | *Anshen v. Facebook*   |      |                 |

run the gamut from the standard photo ads to videos. *See id.* ¶¶ 5–6. People using Facebook see these ads as they navigate through Facebook's service on their computer or mobile devices—should an ad catch their interest, they can click or tap the ad and see further information. *See id.* ¶¶ 5, 41.

To help its advertisers better understand the impact of their marketing efforts, Facebook offers many different metrics that measure and analyze how users are reacting to the ads. *See id.* ¶¶ 7–8, 46–47. These metrics are constantly evolving as Facebook strives to meet the needs of its advertisers. *See id.* ¶¶ 9–10, 46–48, 69. On May 5, 2014, Facebook announced on its "Facebook Business" informational page for advertisers that it would soon introduce new metrics for video advertisements. *See id.* ¶¶ 10, 50; Ex. A (5/5/14 Facebook Post: "Introducing Video Metrics.").1 Those metrics included "video views" (where a video view was defined "as a view of three seconds or more"), the number of video views to 95% (defined as the "number of times your video was viewed to 95% of its length"), and the "average duration of the video view." Ex. A ("Introducing Video Metrics") at 1; *see also* Am. Compl. ¶¶ 10, 50. The May 5, 2014 post did not provide any description of what "average duration of video view" was going to calculate. *See* Ex. A ("Introducing Video Metrics."). In later posts, Facebook described the metric as "the total time spent watching a video divided by the total number of people who have played the video." Am. Compl. ¶ 13; Ex. B (Facebook Advertiser Help Center Post: "How is the 'Average Duration of Video Viewed' calculated?").

In the summer of 2016, Facebook discovered a discrepancy in one of its video metrics and announced it in Facebook's Advertiser Help Center. *See* Ex. B ("How is the 'Average Duration of Video Viewed' calculated?"); *see also* Ex. C (9/23/16 D. Fischer Post: "Facebook Video Metrics Update") at 1 ("About a month ago, we found an error in the way we calculate one of the video metrics on our dashboard – average duration of video viewed."). The error was with the metric "Average Duration of Video Viewed." After the market closed on September 22, 2016, the *Wall Street Journal* published the article, "Facebook Overestimated Key Video Metric for Two Years," reporting that Facebook inflated the average time users spent watching video advertisements by 60-80% (the "WSJ Article"). Am. Compl. ¶ 58. Facebook admitted that "[t]he metric should have reflected the total time spent watching a video divided by the total number of people who played the video. But it didn't." *Id.* The next day, David Fischer, Vice President of Business and Marketing Partnerships at Facebook, admitted that Facebook had misrepresented the Average Duration as the *Wall Street Journal* reported. *Id.* ¶ 59. He explained that while all time was included in the numerator of the Average Duration formula, only views lasting three seconds or longer were included in the denominator, thereby inflating the number significantly. *Id.* ¶¶ 15, 17-19, 59.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|---|---|---|---|
| Title | *Anshen v. Facebook* | | |

### III.     Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint.  Fed. R. Civ. Proc. 12(b)(6).   To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).   "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion."  *Odom v. Microsoft Corp*, 486 F.3d 541, 545 (9th Cir. 2007).

Along with Rule 12(b)(6) requirements, a complaint alleging securities fraud must also satisfy the heightening pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Fed. R. Civ. P. 9(b); 15 U.S.C. §§ 78u-4(b)(1)(B) and (b)(2)(A). To adequately allege falsity under Federal Rule of Civil Procedure 9(b) and the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." *Middlesex Retirement System v. Quest Software, Inc.*, 2008 WL 7084629, at * 3 (C.D. Cal. July 10, 2008).

A complaint alleging violations of Section 10(b) of the Exchange Act must state facts giving rise to a strong inference that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Deliberate recklessness is conduct that "reflects some degree of intentional or conscious misconduct." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). A complaint adequately pleads scienter only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 324 (2007).

### IV.     Discussion

Plaintiffs have not adequately pleaded scienter for the corporate defendant or for any of the individual

|  |  | : |  |
|---|---|---|---|
| Initials of Preparer | | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|----------|------------------------|------|------------------|
| Title    | *Anshen v. Facebook*   |      |                  |

defendants.

### A. Plaintiffs Inadequately Plead Scienter for the Individual Defendants

"In most cases, the most straightforward way to raise an inference of scienter for a corporate defendant will be to plead it for an individual defendant." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (citation and brackets omitted). Plaintiffs fail to avail themselves of this "straightforward" option. The Complaint contains no specific allegations against Defendants Sandberg and Wehner beyond the fact that they signed the form 10-Ks. The only allegations specific to Zuckerberg are that he was "heavily involved in the development of video ads," and that he wanted Facebook to be more "video centric." *Id.* ¶¶ 53, 55, 68, 70.

This is insufficient to raise an inference of scienter. "[E]vidence of a personal profit motive on the part of officers and directors . . . is insufficient to raise a strong inference of scienter." *Glazer Capital*, 549 F.3d at 748. Thus, Zuckerberg's mere potential motivation to inflate the video metrics does not give rise to an inference of scienter. Plaintiffs also seek to bolster their allegations with the statement of a confidential witness ("CW1") who maintains a "belie[f] that upper management would have been keeping their eye on the metrics for videos and video ads." Am. Compl. ¶ 73. CW1 does not, however, have personal knowledge that any of the personal defendants reviewed the video metrics. Because these witnesses are not described "with sufficient particularity to establish their reliability and personal knowledge," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), Plaintiffs have failed to establish scienter.

### B. Plaintiffs Inadequately Plead the "Core Operations" Theory

Having failed to sufficiently allege individual scienter, Plaintiffs next attempt to rely on the "core operations" theory. Under the core operations theory, "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *S. Ferry*, 542 F.3d at 785. "Proof under this theory is not easy. A plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia [*sic*] of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|----------|----------------------|------|-----------------|
| Title | *Anshen v. Facebook* | | |

F.3d 1051, 1062 (9th Cir. 2014).

Plaintiffs obviously have no admissions by any Facebook executives. CW1's statement fails to demonstrate that any of the defendants had "actual involvement" in the mistaken video metric calculation. All CW1 alleges is his "belief" that high level executives would have been involved in growing this aspect of Facebook's business. Even if the individual defendants were very involved in this process, "general allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient to create a strong inference of scienter." *Glazer Capital*, 549 F.3d at 746. Accordingly, Plaintiffs pleadings on this theory fail as a matter of law.

### C.  Plaintiffs Inadequately Plead Corporate Scienter

The Court is mindful that after *Tellabs*, a holistic approach to assessing scienter is key; the "Supreme Court's reasoning in *Tellabs* permits a series of less precise allegations to be read together to meet the PSLRA requirement…. Vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *S. Ferry LP*, 542 F.3d at 784. But even stitching together Plaintiffs' various scienter theories fails to weave a legal tapestry of sufficient quality to survive this motion to dismiss.

Plaintiffs' broad theory is that Facebook hires smart people, so a mistake of this magnitude can be explained only by intentional fraud. They claim that "[i]t is implausible that teams of the most qualified and experienced data scientists innocently made such a simple and obvious error." Opp. at 18. Endorsing Plaintiffs' claim on these allegations would allow a securities fraud claim to proceed against any company that made a mistake relating to an important portion of its business, because the plaintiff could always allege, in hindsight, that the company's talented employees must have known about the issue. Such reasoning would also, bizarrely, subject companies with more talented employees to greater liability in the securities context. That is to say, under Plaintiffs' theory, the smarter the employees, the stronger the inference that any mistake the company made is fraud. Such a result would be absurd.   This theory simply does not give rise to an inference of fraud that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.[1]

---

[1] Plaintiffs also maintain that "[e]very high school student knows how to calculate the average of something: simply add and divide. The obvious inconsistency in this simple metric cannot have been the product of an innocent mistake or even

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00679-SVW-AGR | Date | October 4, 2017 |
|----------|------------------------|------|------------------|
| Title | *Anshen v. Facebook* | | |

#### D.  *Plaintiffs Inadequately Plead Causation*

In order to plead causation, a plaintiff must "allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). The pleadings have to be sufficiently particularized, because "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Employees Ret. Fund*, 774 F.3d at 605.

Plaintiffs identify two declines in Facebook's stock price: (a) a decline of 2.21% in Facebook's share price on September 26, 2016 (following Facebook's announcement of the discrepancy in the average duration of video viewed metric), *see* Am. Compl. ¶¶ 14– 16, 58–60; and (b) the decline of 5.6% on November 3, 2016 (the day after Facebook's investor earnings call) to show loss causation, *see id.* ¶¶ 23–24, 65–66. However, Facebook disclosed the discrepancy to the public at least "[s]everal weeks" before the September 26 decline and more than two months before the November 3 decline. Ex. F (9/22/16 WSJ Article); *see also* Ex. B ("How is the 'Average Duration of Video Viewed' calculated?"); Ex. C ("Facebook Video Metrics Update") at 1. Plaintiffs plead no facts that would explain why the market would have taken so long to react to Facebook's statement nor does Plaintiff adequately exclude alternative explanations for the price drop. Accordingly, the Complaint fails to meet the Rule 9(b) standard on causation.

#### V.    Conclusion

Plaintiffs have altogether failed to adequately plead scienter under the PSLRA standards. Nor have Plaintiffs pled causation sufficiently. As Plaintiffs have failed to indicate they can allege additional facts capable of surviving a motion to dismiss, the Court is skeptical of the viability of the claim.[2] However, the complaint is DISMISSED WIHTOUT PREJUDICE.

IT IS SO ORDERED.

---

negligence." Opp. at 19. Plaintiffs presumably believe that every high school student received a perfect score on exams testing averages.

[2] Although unnecessary to the ruling at hand, the Court also acknowledges that the Defendant has raised serious issued with regard to whether the risk disclosures at issue are actionable.

```
                                                          :
                                          _____    _____
                        Initials of Preparer
                                              PMC
```